UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AARON SCHEIDIES,

    Plaintiff,

v.

USA TRIATHLON, INTERNATIONAL
TRIATHLON UNION, and 3-D RACING,
LLC,

    Defendants.
_____/

Case No. 12-11842

Honorable Patrick J. Duggan

## OPINION AND ORDER GRANTING USA TRIATHLON'S MOTION TO SET ASIDE ENTRY OF DEFAULT

This matter is before the Court on USA Triathlon's motion to set aside the clerk's entry of default, filed pursuant to Federal Rule of Civil Procedure 55(c) on June 1, 2012. The motion has been fully briefed. The Court does not believe that oral argument will aid in its disposition of the motion; therefore, it is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2). For the reasons stated below, the Court grants the motion and sets aside the clerk's entry of default against USA Triathlon.

**I. Procedural Background**

Plaintiff Aaron Scheidies ("Plaintiff") filed this lawsuit against Defendants on April 25, 2012, asserting violations of the Americans with Disabilities Act through triathlon racing rules and policies that Plaintiff alleges discriminate against the blind. According to a Return of Service filed May 6, 2012, Plaintiff delivered a summons and copy of the

Complaint to USA Triathlon (hereafter "USAT") on April 30, 2012, by leaving them with USAT's "staff liaison," Susan Kovarik.  (Doc. 5; *see also* Pl.'s Resp. Ex. C (USAT's Staff Directory identifying Ms. Kovarik as the "staff liaison").)  According to the declaration of USAT's Chief Executive Officer, Rob Urbach, Ms. Kovarik is not authorized to accept legal service for USAT.  (Mot. Ex. 1 ¶ 4.)  Mr. Urbach further attests that Ms. Kovarik did not understand that the documents delivered to her required immediate attention and they simply were left on Mr. Urbach's desk where they sat for three weeks (during two of which Mr. Urbach was out of town on official business).  (*Id* ¶ 6.)

Mr. Urbach immediately forwarded Plaintiff's Complaint to USAT's insurance broker when he became aware of it.  (*Id*. ¶ 8.)  Mr. Urbach expected the insurance carrier to appoint counsel to handle the matter; however on May 25, 2012, he discovered that this did not occur.  (*Id*. ¶¶ 8-9.)  On May 29, 2012, Mr. Urbach selected counsel who, on June 1, filed the pending motion to set aside the default, as well as USAT's Answer to the Complaint.  (Docs. 13, 14.)

## II.  Applicable Law and Analysis

Federal Rule of Civil Procedure 55(c) provides that a court may set aside an entry of default for "good cause."  In determining whether "good cause" exists, courts consider whether: (1) the plaintiff will be prejudiced; (2) the defendant has a meritorious defense; and (3) culpable conduct of the defendant led to the default.  *United States v. $22,050.00 U.S. Currency*, 595 F.3d 318, 324 (6th Cir. 2010) (citing *Waifersong, Ltd. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992)).  Courts are to employ a "lenient

standard" when evaluating a request to set aside a default that has not yet ripened into a judgment. *Shepard Claims Serv., Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 193 (6th Cir. 1986). "[W]hen the first two factors militate in favor of setting aside the entry, it is an abuse of discretion for a district court to deny a Rule 55(c) motion in the absence of a willful failure of the moving party to appear and plead." *Id.* at 194. Federal courts favor trials on the merits; therefore, doubts should be resolved in favor of setting aside a default. *United Coin Meter Co. v. Seaboard Coastline R.R.*, 705 F.2d 839, 846 (6th Cir. 1983). This Court finds good cause to set aside the default entered against USAT.

USAT has asserted a meritorious defense. USAT argues that Plaintiff's Complaint is subject to dismissal due to: (1) insufficient service of process; (2) lack of subject matter jurisdiction; (3) failure to exhaust administrative remedies; and (4) federal preemption. Plaintiff argues in response that USAT fails to elaborate on how these defenses are applicable to this case and that they are "wholly without merit." (Pl.'s Resp. Br. at 5). However, "a defense is meritorious if it is 'good at law,' regardless of whether the defense is actually likely to succeed on the merits." *$22,050 U.S. Currency*, 595 F.3d at 326; *see also United Coin Meter*, 705 F.2d at 845 (internal quotation marks and citations omitted) (advising that "[i]n determining whether a defaulted defendant has a meritorious defense[,] likelihood of success is not the measure. . . . Rather, if any defense relied upon states a defense good at law, then a meritorious defense has been advanced.").

The Court also finds that Plaintiff will not be prejudiced if the default is set aside. Plaintiff argues that he will suffer prejudice if the default is set aside because Defendants will be able to continue the alleged unlawful conduct while the lawsuit is litigated;

3

whereas the entry of default will provide Plaintiff immediate relief. (Pl.'s Resp. Br. at 3-4.) Plaintiff's assertion amounts to nothing more than a claim of prejudice due to delay and "delay alone is not a sufficient basis for prejudice."[1] *INVST Fin. Group, Inc. v. Chem-Nuclear Sys., Inc.*, 815 F.2d 391, 398 (6th Cir. 1987) (internal quotation marks and citation omitted); *see also Burrell v. Henderson*, 434 F.3d 826, 835 (6th Cir. 2006) ("Delay in adjudicating a plaintiff's claim does not qualify as sufficient prejudice under Rule 55."). "Rather it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion."[2] *INVST Fin. Group*, 815 F.2d at 398 (citing *Davis v. Musler*, 713 F.2d 907,

---

[1]To the extent Plaintiff claims that he will be irreparably harmed by the enforcement of Defendants' objected to rule and/or policy during the pendency of this lawsuit (*see* Pl.'s Resp. Br. at 4), his claim is not unlike any plaintiff awaiting the resolution of his or her lawsuit on the merits. As such, the Federal Rules of Civil Procedure provide a potential remedy in the form of a preliminary injunction. *See* Fed. R. Civ. P. 65.

[2]Plaintiff attempts to show that any delay caused by setting aside the default will "provide greater opportunity for . . . collusion," asserting that the delay "will allow multiple Defendants to collude in an effort to avoid being held judicially accountable for conduct that they all but acknowledge is improper." (*See* Pl.'s Resp. Br. at 3). The Court does not believe this is the "collusion" that the courts are describing as sufficient to establish prejudice. *See, e.g., Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 5088, 516 (2nd Cir. 2001) (discussing "the potential for a contrived unenforceability of an eventual judgment in favor of [the plaintiff]" as a factor favoring the denial of the defendants' request to set aside the entry of default, although the district court granted the request despite this possibility and instead conditioned its decision on the defendants' posting of a bond); *Todtman, Nachamie, Spizz & Johns, P.C. v. Ashraf*, 241 F.R.D. 451, 455 (S.D.N.Y. 2007) (declining to vacate the entry of default, finding *inter alia* that the plaintiff "ha[d] a legitimate concern that increased delay w[ould] allow [the] defendants to divert funds and preclude [the] plaintiff from successfully enforcing a judgment against the defendants in the future" where the plaintiffs showed that in other proceedings, the defendants had wrongfully diverted $6.7 million in violation of a temporary restraining order and were held in contempt of court.)

916 (2d Cir. 1983), quoting 10 C. Wright, A. Miller and M. Kane, Federal Practice and Procedure, § 2699 at 536-37 (1983)).

As set forth earlier, because the first two factors militate in favor of setting aside the default, it would be an abuse of discretion for this Court to deny relief unless USAT wilfully failed to appear and plead. For a defendant's conduct to be deemed culpable for the default, it must reflect "an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on judicial proceedings." *$22,050 U.S. Currency*, 595 F.3d at 327 (internal quotation marks and citation omitted). Mr. Urbach's declaration indicates that USAT did not wilfully or recklessly fail to timely respond to Plaintiff's Complaint. It appears to this Court, instead, that Plaintiff's method of serving USAT was the primary cause of USAT's delay.

Federal Rule of Civil Procedure 4(h) provides, through its incorporation of Rule 4(e), that proper service on USAT may have been made: (1) in accordance with Michigan law *or* (2) "by delivering a copy of the summons and the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . ." The Michigan Court Rules allow for service on USAT by "serving a summons and a copy of the complaint on an officer, director, trustee, agent, or person in charge of an office or business establishment of the association, *and* (2) sending a summons and a copy of the complaint by registered mail, addressed to an office of the association. . . ." MCR 2.104(E). Ms. Kovarik is not an individual who could have received proper service on behalf of USAT absent the additional sending of the summons and copy of the Complaint by registered mail to USAT. In other words, she is not an

5

officer, managing or general agent, or other agent authorized by appointment or law to receive service; and as an agent or person in charge of an office of USAT, service upon Ms. Kovarik had to be in addition to service by registered mail upon USAT. *See supra.* Plaintiff therefore did not serve USAT in accordance with the Federal Rules of Civil Procedure.

As Plaintiff correctly recites in his response to USAT's motion, the Michigan Court Rules do provide that "[a]n action shall not be dismissed for improper service of process unless the service failed to inform the defendant of the action within the time provided in these rules for service." MCR 2.105(J)(3). Nevertheless, this Court does not read Rule 2.105(J)(3) as providing that service on a defendant is proper if the manner of service set forth in the rules is not followed but the defendant is informed of the action or that entry of default may be appropriately entered against a defendant who has notice of the action but was not properly served with a summons and copy of the complaint. Such a reading, in fact, would be at odds with the holdings of the Sixth Circuit Court of Appeals.

The Sixth Circuit has held that the failure to properly serve a defendant pursuant to Rule 4 cannot be excused based on the defendant's knowledge of the action and requires dismissal of a default judgment entered against the defendant. *See, e.g., LSJ Inv. Co. v. O.L.D., Inc.*, 167 F.3d 320, 322, 324 (6th Cir. 1999); *see also Friedman v. Estate of Presser*, 929 F.2d 1151, 1155, 1157 (6th Cir. 1991) (dismissing action where the defendants were not properly served within the required 120-days period even though they had knowledge of the action). In *Friedman*, the appellate court followed "the great majority of courts" in rejecting the district court's determination that actual knowledge of

6

a lawsuit is a sufficient substitute for proper service, stating as follows:

> The district court agreed with plaintiffs' argument and stated that "although plaintiff's [sic] original service was technically defective, all defendants had actual knowledge of this action and have not been prejudiced by the delay in service." For the great majority of courts, however, actual knowledge of the law suit does not substitute for proper service of process . . .
> . . .
> As suggested by our prior decision in [*United States v.*] *Gluklick*[, 801 F.2d 834 (6th Cir. 19860] we agree with the majority rule. Due to the integral relationship between service of process and due process requirements, we find that the district court erred in its determination that actual knowledge of the action cured a technically defective service of process . . . In short, the requirement of proper service of process "is not some mindless technicality." *Del Raine v. Carlson*, 826 F.2d 698, 704 (7th Cir. 1987).

*Friedman*, 929 F.2d at 1155-56 (additional internal citations omitted). As such, the Court concludes that it is proper to set aside the default against USAT not only because there is good cause, but also because it was not properly entered in the first instance.[3]

### III.  Conclusion

For the reasons discussed above, this Court finds that Plaintiff will not suffer prejudice if the default against USAT is set aside. Moreover, USAT has set forth meritorious defenses to Plaintiff's action. USAT's delay in responding to the lawsuit is

---

[3]Since obtaining a default against USAT, Plaintiff has obtained clerk's entries of default against the remaining defendants. (Docs. 11, 19.) As Plaintiff already has indicated that he will be prejudiced by any delay in the resolution of this lawsuit, the Court suggests that he review the Return of Service relevant to these defendants to verify whether his process server complied with Rule 4. This Court generally will not enter a default judgment where it finds that the defendant was not served in accordance with the rules.

not due to culpable conduct; rather, it appears to have been due to Plaintiff's method of serving the summons and copy of the Complaint on USAT.

Accordingly,

**IT IS ORDERED** that USA Triathlon's Motion to Set Aside Entry of Default is **GRANTED**.


Dated: July 10, 2012                    s/PATRICK J. DUGGAN
                                        UNITED STATES DISTRICT JUDGE

Copies to:
Richard H. Bernstein, Esq.
Ryan O. Lawlor, Esq.